IN THE UNITED STATES DISTRICT COURT
FOR THE SOTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY W. BROOKS, ) | |
|   ) | |
|     Plaintiff, ) | |
|   ) | |
|         V. ) | |
|   ) | Cause No. 1:18-cv-613 WTL-TAB |
| CITY OF CARMEL, Acting by and Through ) | |
| its Legal Department, and DOUGLAS C. ) | |
| HANEY, ) | |
|   ) | |
|     Defendants. ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JUDGMENT**

Plaintiff Gary W. Brooks, by counsel, respectfully submits this memorandum of law in opposition to Defendants' Motion for Summary Judgment.

**STATEMENT OF MATERIAL FACTS IN DISPUTE**

Gary W. Brooks is 59 years old. In 1995 he suffered a brain aneurism that caused severe bleeding inside his skull. Surgery was required to relieve the pressure. Brooks survived these events but suffered debilitating memory loss and continues to experience difficulty in forming memories. (Declaration of Gary W. Brooks, "Brooks Decl.," ¶¶3-4) He subsists on Social Security Disability payments and the support of his girlfriend, Penny, with whom he has lived for 20 years. (Brooks Decl., ¶¶5-6) To overcome this disability Brooks makes "artificial memories" by using a video recorder to make audiovisual recordings of his important daily activities, including any business he conducts in a government office. To this end, Brooks carries an old Sony camera which has the capacity to digitally record audio and video. The

camera is too large to fit into a pocket. When Brooks runs an errand he places the camera on top of a clip board that he uses to keep notes to himself. (Brooks Decl., ¶13) The camera is plainly visible.

Brooks does not record every moment of his life, which would lead to an impractically large number recordings to search through when it was necessary to find something important. (Brooks Decl, ¶10) He does not, for example, record trips to the bank or the pharmacy, since these errands result in a receipt that records what what he needs to remember about the transaction. Brooks has felt the particular need to record his interactions with Carmel officials ever since he was ticketed by a Carmel police officer for improperly backing out of his driveway. Brooks contested the ticket in Carmel City Court. After the officer testified that Brooks backed up in an unsafe manner, Brooks played the video tape of the incident for Judge Gail Bardoch and was able to show that the officer has testified contrary to the facts. Judge Bardoch dismissed the case. (Brooks Decl, ¶14) But since then, Brooks has feared that Carmel officials would lie about his actions in a way that would cause him harm. (Brooks Decl., ¶15)

As a Carmel resident, Brooks occasionally needs to visit City offices to conduct his affairs. Since as least 2012, however, Carmel officials have told him that he cannot record inside their offices, even in the areas accessible to the general public, and have refused to serve him and asked him to leave. He has been told on multiple occasions that if he did not either leave or cease recording that the police would be called. (Brooks Decl., ¶16) Defendants acknowledge that Carmel has a policy of forbidding members of the public to make recordings inside City offices. (City's Answer to Plaintiff's Interrogatory No. 2; Deposition of Douglas C. Haney, "Haney Dep.," p. 19)

**The March 4, 2016 Encounter**

On two occasions Brooks visited a Carmel City office in order to conduct business and was physically assaulted by Defendant Douglas Haney, the Carmel City Attorney. On March 4, 2016 Brooks visited the Carmel Department of Community Services ("DOCS") concerning a trailer that he had been told constituted a recreational vehicle impermissibly parked in his driveway. The recording Brooks made of the incident shows Brooks approaching the counter at which members of the public are served and asking to speak to Brent Ligett, the official who has previously contacted him about the camper. (Defendants' Exhibit D)  He does not threaten the employees working in the cubicles behind the counter and the employees to do not appear to be frightened or upset by his presence. After interacting with one employee for over a minute, another employee tells Brooks to stop recording. Brooks refuses to stop recording and explains to her why he is continuing to record. Nonetheless, the women do not appear to be disturbed by his recording and continue to go about their work. Haney arrives and orders Brooks to turn off the camera. Brooks explains that he has a disability in that he cannot remember his activities without a recording. Haney tells that he would respond to written questions but Brooks says that he wishes to speak to Ligett. When Brooks refuses to turn off the recording, Haney places his stomach on Brooks' chest and pushes Brooks backward until Brooks is forced out of the office. (Brooks Decl., ¶18)

**The May 18, 2017 Encounter**

On May 18, 2017 Brooks visited the Carmel Legal Department to submit a public records request. The video of the encounter shows Brooks entering City Hall and approaching the Legal Department's receptionist desk. (Defendants' Exhibit E)  The receptionist tells Brooks to stop

recording before he can state his business.  Almost immediately Haney emerges from the inner office, orders Brooks to leave, and tells the receptionist to call the police.  When Brooks refuses to depart or cease recording, Haney crosses the partition that separates behind which employees work and shoves Brooks into a wall.  (Brooks Decl., ¶23)  After shoving Brooks, Haney returns behind the partition and continues to speak to Brooks until he finally gives Brooks the paperwork he requested and Brooks departs.  Brooks experienced pain from having been shoved against a wall.  He suffered a sprained wrist.  He went to a hospital to have it x-rayed and it was not fractured.  (Brooks Decl., Exhibit A)  It was treated with Ibuprofin.

## ISSUES

Defendants' Motion for Summary Judgment raises the following issues for the Court's review:[1]

1. Whether Defendants' refusal to offer reasonable accommodation to Brooks' disability violates Title II of the Americans with Disabilities Act;

2. Whether Defendants' policy of forbidding citizens from recording themselves in the public areas of City offices violates the First Amendment;

3. Whether Haney's physical restraint of Brooks constitutes excessive force in violation of the Fourth Amendment;

4. Whether Haney enjoys qualified immunity for his violations of Brooks' rights under the First or Fourth Amendments;

---

[1] Plaintiff intended to withdraw his claim for intentional infliction of emotional distress but failed to properly note this in his Statement of Claims.

5. Whether Haney's acts and omissions constitute battery or intentional infliction of emotional distress under Indiana law.

## DISCUSSION

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 to vindicate his rights under the First and Fourth Amendments. He also brings claims under the Americans with Disabilities Act, as well as some claims under Indiana law. He seeks monetary damages and a permanent injunction.

I. THE CITY REFUSED TO ACCOMMMODATE BROOKS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT.

The City's refusal to allow Brooks to record his own actions in the public-accessible areas of City offices violates Title II of the Americans with Disabilites Act ("ADA"). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities…an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. §35.160(b)(1).

To prove a prima facie case of discrimination under Title II, a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of' his disability. *Lacy v.*

*Cook County, Illinois,* 897 F.3d 847, 853 (7th Cir. 2011). Defendants do not contest the first element, nor could they. Brooks has suffered severe memory dysfunction since undergoing surgery for a brain aneurism in 1995. He has been determined disabled by the Social Security Administration and subsists on Social Security Disability. (Brooks Decl., ¶6)

### A. The City denied Brooks services due to his disability.

Defendants challenge the second element of his claim, that he was denied services due to his disability. Brooks was certainly denied services. In the March 4, 2016 encounter Brooks attempted to speak with a zoning official, Brent Liggett, regarding the trailer parked in his driveway but was unable to speak to anyone in the department about his problem before Haney threw him out of the office. Brooks received no services whatsoever in that encounter. (Defendants' Exhibit D) In the course of the May 18, 2017 visit to the Law Department, Brooks was ultimately was able to submit his records request and obtain a receipt, but only after being physically assaulted. In both instances Haney called the police. (Haney Dep., p. 58) Had Brooks not departed before the police arrived he would have been arrested or removed from the building. That Brooks may have recorded himself unmolested on a few other visits does not change the fact that the City refuses to serve Brooks if he records himself.

Defendants argue that they have offered to accommodate Brooks by letting him communicate with City officials in writing. (Brief of Defendants, p. 15) In some instances mailing in a written form might suffice. But in other circumstances it would not. In the March 4, 2016 encounter Haney tells Brooks that if Brooks sent his questions in writing that he would send him a written reply, so that Brooks would have a record of the encounter. Haney describes this as a reasonable accommodation of Brooks' disability. Haney asks Brooks whether he can

read and write. Brooks doesn't answer these questions directly and insists on speaking to a zoning official in person. (Defendants' Exhibit D) Brooks can read and write. (Brooks Decl., ¶20) But doing so is very difficult for him. Brooks' memory impairment makes it difficult for him to compose written documents longer than she short notes he writes to himself as mnemonic aides. (Brooks Decl., ¶21) Brooks has not composed a long letter to anyone since his brain aneurism. Written correspondence is seldom an adequate substitute for speaking to someone directly. This Court, for example, would not excuse a party from submitting to a deposition on the grounds that he or she was willing to answer written interrogatories. Responding to Brooks' written inquiries does not provide him with meaningful access to the City's services because Brooks lacks the ability to write out questions to a complex zoning question.

The failure to make "reasonable modifications in policies, practices, or procedures" can constitute discrimination under Title II. *Lacy,* 897 F.3d at 853. The accommodation Brooks seeks is simply an exception to the City's policy against making recordings. This accommodation requires no expenditure of money. It does not require additional personnel or equipment or the physical modification of Defendants' premises. If Defendants are concerned that Brooks will use his camera to zoom in on a confidential document that would not otherwise be visible to the naked eye, or capture the conversation of third parties, Defendants could ask that Brooks schedule an appointment in advance so that sensitive documents could be temporarily removed and confidential conversations paused during Brooks' brief presence. Accommodating Brooks would cause Defendants, at most, a minor inconvenience. Such accommodation would not fundamentally alter the services Defendants provide.

**B. Haney acted with deliberate indifference toward Brooks' disability.**

Defendants argue that even if they discriminated against Brooks, they are not liable for monetary damages because they did not discriminate against him intentionally. (Brief of Defendants, p. 17)

The Seventh Circuit has recently ruled that a plaintiff in a Title II claim under the ADA may show intentional discrimination by establishing that the defendant acted with deliberate indifference.  To do so, a plaintiff must show 1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  *Lacy,* 897 F.3d at 863.  Brooks designated more than adequate evidence to show both.  In the March 4, 2016 encounter Brooks tells the clerical employees he initially encounters that he is making the recording because he suffers from a memory impairment.  When Haney arrives he repeats this explanation.  Haney tells Brooks that his offer to respond in writing is a "reasonable accommodation of Brooks "disability."  (Exhibit D, 10:55 to 11:05)  Haney's language expressly tracks the requirements of the ADA.  Haney acknowledges in his own words that Brooks suffers from a disability and that his disability requires some sort of accommodation.  Yet when Brooks does not immediately accept the accommodation that Haney offers, he pushes Brooks out of the office.  Haney both knew that forbidding Brooks to record himself would likely result in a harm to Brooks' rights under the ADA and he refused to act on that likelihood.

II.     DEFENDANTS VIOLATED BROOKS' RIGHTS UNDER THE FIRST AMENDMENT.

Defendants' refusal to allow Brooks to record his interaction with City officials violated his rights under the First Amendment.  In *American Civil Liberties Union v. Alvarez,* 679 F.3d 583 (7th Cir. 2012) the Seventh Circuit considered an Illinois statute that forbade the recording of police officers performing their duties in public places.  The court found that restricting the use

of an audio or audiovisual recording device suppresses speech just as effectively as restricting the dissemination of the resulting recording. Audiovisual recordings are medias of expression commonly used for the preservation and dissemination of information and are included within the speech and free press guarantees of the First Amendment.  The act of making recordings is necessarily included in the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the recording. *Id.* at 595.

Defendants cite *Porat v. Lincoln Towers,* 2005 WL 646093, at *4 (S.D.N.Y 2005) for the proposition that in order to gain First Amendment protection, a putative speaker must intend to communicate his message to an audience.  They note that Brooks keeps his recordings for personal use and does not post them on social media or disseminate them to the press. Conspicuously absent from Defendants' argument is any citation to authority from the Seventh Circuit or the Supreme Court that a necessary element in a First Amendment claim is the dissemination of the recording to an audience.  The undersigned attorney knows of none.  But even if such a requirement exists, Brooks has fulfilled it.  In the March 4, 2016 encounter Brooks tells the employees he encounters that he needs to record himself in their office because people sometimes officials don't accurately remember his actions.  (Exhibit D, 5:00 t0 5:20)

Brooks concern grew out of his experience being ticketed by a Carmel police officer for improper backing up and getting the ticket dismissed only after taking his recording of his interaction with the officer to the Carmel City Court and showing that the officers' description of Brooks' actions was wrong.  (Brooks Decl., ¶14)  Brooks' intended audience is anyone to whom he would need to establish the truth should City officials mischaracterize his actions.  As even Defendants acknowledge, the First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public

interest. *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994).  It is a matter of public interest when public officials engage in any kind of misconduct.  Such misconduct would include Doug Haney's physical assault of Brooks—a fact that few would likely believe had Brooks not recorded it.

Brooks right to record public officials on public property is protected by the First Amendment.  Defendants' Motion for Summary Judgment should therefore be denied.

### III.  HANEY UNREASONABLY SEIZED BROOKS AND USED EXCESSIVE FORCE.

Doug Haney physically assaulted Brooks on two separate occasions, each in an attempt to force Brooks to cease recording himself in a City office, which Haney believed violated a City policy.  On the second occasion Haney injured Brooks' wrist.  Defendants contend that Haney's conduct does not implicate the Fourth Amendment.  On the contrary, the basic purpose of the Fourth Amendment's prohibition of unreasonable searches and seizures is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.  *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 528 (1967).  There is no dispute that Haney is a government official who was acting in his official capacity at the time of the incidents.  Without stating case law for this precise point, Defendants imply that the Fourth Amendment does not apply to government officials unless they are engaged in the investigation or enforcement of criminal law or some regulatory scheme.  Although there is no criminal statute that forbids recording in a municipal office, Haney clearly believed that law enforcement was necessary because he called the police. (Haney Dep., p. 21; p. 58)  It would appear that because the police did not arrive promptly Haney did himself what he wanted the police to do, *i.e.,*

enforce the policy against recording. Clearly, the Fourth Amendment applies to Haney's conduct.

In *California v. Hodari D.* the Supreme Court held that "an arrest requires *either* physical force…or, where that is absent, *submission* to the assertion of authority." *California v. Hodari D.,* 499 U.S. 621, 627 (1991) [emphasis in original]. Both elements are present in the March 4, 2016 incident. In that incident Haney accosts Brooks, stands toe-to-toe with him pressing his body against Brooks' stomach for at least a moment, and walks forward, forcing Brooks to walk backwards until he is ejected from the DOCS office. Brooks submitted to Haney's authority in that he obeyed Haney's instruction to either cease recording or leave the office. Brooks did not cease recording but he did leave. In the May 18, 2017 encounter the second element required under *Hodari* was present in that Haney shoved Brooks against a wall. (Exhibit E.) Haney admits that he touched Brooks. (Haney Dep., p. 52) Brooks did not submit to Haney's authority this time in that he did not cease recording and did not leave until he was able to complete his business. But Haney shoved Brooks with enough force to hurt his wrist. This constitutes a seizure.

Defendants argue that Haney's shove does not constitute a "seizure" within the meaning of the Fourth Amendment, citing *McCoy v. Harrison,* 341 F.3d 600 (7th Cir. 2003). In *McCoy,* an animal welfare officer attempted to inspect plaintiff's kennels when she slammed a gate on her and he struck her with the back of his hand, knocking her to the ground; the officer then walked away. *Id.* at 603. The Seventh Circuit found that this act did not constitute a seizure. The Seventh Circuit found that the officer's actions did not constitute a seizure, noting that "there is no evidence to show he intended to or did acquire physical control over her person… nor was there a show of authority and restraint of McCoy's movements." *Id.* at 606. In *McCoy*

the officer never commanded the plaintiff to do anything nor forced her to do anything. In contrast, Haney repeatedly ordered Brooks to cease recording or leave the office. Haney shoved Brooks to force him to either cease recording or leave. There was both a show of authority and restraint on Brooks movement.

Haney's actions constitute a seizure and Defendants' Motion for Summary Judgment should therefore be denied.

### IV.   HANEY IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendants argue that Haney is entitled to qualified immunity from the First and Fourth Amendment claims.. The doctrine of qualified immunity protects government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights reasonably knowable at the time of the conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).. The Supreme Court has developed a two-part test to determine whether a government official is entitled to qualified immunity in a civil suit under Section 1983. *Saucier v. Katz,* 533 U.S. 194, 200-101 (2001). First a court must determine whether the facts, construed in the most favorable to the plaintiff, demonstrate a constitutional violation. Id. at 201. Second, if such a violation has been established by the facts, a court must determine whether the law was "clearly established" at the relevant time. Id. A court may take these steps in either order. *Pearson v. Callahan,* 555 U.S. 223, 241-42 (2009). To show that a constitutional right is "clearly established," a plaintiff must either 1) cite a closely analogous case establishing a right to be free from the specific conduct at issue; or 2) show that the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Chelios v. Heavener,* 520 F.3d 678, 691 (7th Cir. 2008).

With regard to the First Amendment claim, the cases Plaintiff cited above, particularly *American Civil Liberties Union v. Alvarez,* 679 F.3d 583 (7th Cir. 2012), establish that the right to make recordings is a necessary corollary to the right to disseminate them, and that citizens have the right to record the actions of government officials performing their duties in public spaces. Defendants contend that the First Amendment does not apply because Brooks makes the recordings for purely personal use with no intent to disseminate them. But this is factually untrue. Brooks uses these recordings to correct the record when government officials mischaracterize his actions. (Brooks Decl., ¶ 14) His audience is any government official or other person who might question his conduct and to whom he needs to show the recording in order to demonstrate the truth.

With regard to the Fourth Amendment, Haney's conduct is so egregious that no reasonable person could believe that it would not violate clearly established rights. There is no universe in which it is appropriate for a city attorney to shove a 59-year-old disabled man into a wall in order to prevent him from recording himself in City Hall.

Finally, Plaintiff seeks a permanent injunction forbidding Defendants to interfere with his right to record himself in the publicly accessible areas of City offices. Complaint, ¶35. The doctrine of qualified immunity does not apply to Brooks' claims for injunctive relief. *Neely-Bey Tarik-El v. Conley,* 912 F.3d 989, 1004 (7th Cir. 2019). To the extent that Defendants seek immunity for Haney's future enforcement of the City's policy against recording, Haney's request for qualified immunity must be denied.

V. FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S BATTERY CLAIM.

Haney battered Brooks twice, first on March 4, 2016 by getting in Brooks' face and pushing him backwards out of the office, and again on May 18, 2017 by shoving him against a wall. Assault occurs when an individual acts intending to cause an imminent apprehension of a harmful or offensive contact with another person. *Raess v. Doescher,* 883 N.E.2d 790, 794 (Ind. 2008)  Even a slight touching can be the basis of a battery action under Indiana law. *Lessley v. City of Madison, Ind.,* 654 F.Supp.2d 877 (S.D. Ind. 2009).

Defendants challenge the element of intent, arguing that Haney did not intend to harm Brooks.  Haney denies touching Brooks in the 2016 incident, and claims that his intent in the 2017 incident was to walk past Brooks in the hope that Brooks would follow him out of the office.  The video evidence belies both these assertions.  In the 2016 incident Haney gets so close to Brooks that Haney's face fills the entire screen.  Brooks contends that while doing so Haney's stomach touched him. (Brooks Decl., ¶18).  All the while Haney is ordering Brooks to leave the office.  It is clear from the video that Brooks intended to physically intimidate Brooks into exiting the office.  The video of the 2017 incident shows Haney moving rapidly across the partition that separates the employees' cubicles from the public area of the office and moving toward Brooks suddenly, all the while ordering Brooks to get out.  Haney does not walk past Brooks in order to lure him out the door.  The only plausible interpretation of Haney's actions in the video is that he was attempting to force Brooks to stop recording or to shove him out the door, causing him to hit a wall instead.

Controverted allegations may only be resolved by a trial on the merits, not summary judgment. *Free v. Bland,* 369 U.S. 663, 671 (1962).  Summary judgment is inappropriate on the battery claim due to the disputed interpretation of Haney's intent based on the video evidence.

## CONCLUSION

For the foregoing reasons Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ Jeffrey S. McQuary, #16791-49
BROWN TOMPKINS LORY
608 East Market Street
Indianapolis, IN 46202
Telephone: (317) 631-6866
Facsimile: (317) 685-2329

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed using the Court's CM/ECF system on July 2, 2019 A.D. and is available to all counsel of record using the same, or was deposited in the U.S. Mail and addressed as follows:

Paul T. Belch<br>
Travelers Staff Counsel Office<br>
280 East 96th Street, Suite 325<br>
Indianapolis, IN 4640

/s/ Jeffrey S. McQuary

Jeffrey S. McQuary, 16791-49
BROWN TOMPKINS LORY
608 East Market Street
Indianapolis, IN 46202
Telephone: (317) 631-6866
Facsimile: (317) 685-2329
jmcquary@btlmlaw.com