**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GARY W. BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00613-TWP-TAB |
| | ) | |
| CITY OF CARMEL and DOUGLAS C. HANEY, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants City of Carmel ("Carmel") and Douglas C. Haney ("Haney") (collectively, "Defendants") (Filing No. 32). Plaintiff Gary W. Brooks ("Brooks") initiated this lawsuit, bringing claims for violation of Title II of the Americans with Disabilities Act ("ADA"), violation of First and Fourth Amendment rights, and battery. The Defendants seek summary judgment, asserting the evidence does not support Brooks' claims and qualified immunity protects Haney against the claims. For the following reasons, the Court **grants in part and denies in part** the Defendants' Motion.

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Brooks as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff Brooks is over 60 years old and is a resident of Carmel, Hamilton County, Indiana. He suffered a brain aneurism in 1995, which required emergency surgery. Brooks experienced

memory loss as a result of the injury and, since that time, has had difficulty forming new memories. He has difficulty performing daily tasks because of his memory problems. Brooks lives with his girlfriend of twenty years, who helps him get by. He receives social security disability benefits for financial support (Filing No. 43-2 at 1).

Because Brooks has trouble forming new memories, when he does anything that he thinks is important to remember, he will record himself with a Sony video recording camera. The camera is old and large, so he carries it on top of a clipboard, and he uses the clipboard to take notes for himself to remember. It is impractical for Brooks to record all his activities, so he does not record, for example, trips to the bank and pharmacy because they provide receipts of the transactions. However, Brooks typically records any personal business that he conducts with government officials. When he uses his camera to record his interactions, the camera is plainly visible. *Id.* at 1–2.

Defendant Carmel is a city within Hamilton County, Indiana. Defendant Haney is an employee of Carmel as its "in-house" counsel. Haney represents Carmel in all its legal affairs. He does not have the authority to arrest people (Filing No. 34-3 at 3, 43). Certain offices within the Carmel government have a policy that prohibits recording or photographing in the private areas of the office. The Department of Community Services ("DOCS") and the Law Department are two offices that have such a policy. Written notices are posted in the offices, and any individual who enters those offices with video or audio equipment is advised orally of the policy by Carmel employees. The Law Department office has had this policy in place before Haney came to work for Carmel in 1997. When Haney became the chief legal officer, he continued the policy because the office contains confidential and privileged documents, and confidential communications with clients occur on a regular basis in the office. *Id.* at 5–10.

If an individual is violating the recording policy while in an office, they are asked to stop violating the policy or to leave the office. They are told to leave the office and return to the hallway where recording is permitted. The policy of not permitting recording within certain departments of the executive branch of Carmel is limited to the inner offices and work areas of these departments, including the Law Department and DOCS. The policy does not extend to the hallways or other common spaces within Carmel's City Hall or to the various public meetings that are held in designated rooms within City Hall. If an individual has a need to record a communication with a Carmel official or employee, such a communication would be permitted to take place outside the inner offices and employee work areas of these executive departments such as in the hallways, common spaces, and designated conference and meeting rooms located throughout City Hall. *Id.* at 13–14; Filing No. 34-4 at 1–2.

As a resident of Carmel, Brooks occasionally needs to visit Carmel's city offices to conduct personal business. Since 2012, Carmel city officials have told Brooks that he cannot record in the city offices, and they usually do not help him and ask him to leave. On some occasions, they have threatened to call the police, and on other occasions, nothing is said to Brooks and he quickly conducts his business and leaves (Filing No. 43-2 at 3).

On March 4, 2016, Brooks came to the DOCS in Carmel's City Hall to discuss a trailer on his property in Carmel. Brooks does not remember who he spoke to that day or the purpose of his visit other than it involved something about a trailer on his property. At his deposition, Brooks could not remember if he talked with Haney that day. He has no memory of anything that happened during his visit other than what is on his video recording (Filing No. 34-1 at 5–9).

Prior to entering City Hall, Brooks started his video recording and then walked into the building. He found his way to the DOCS office and stated that he was looking for the "head man"

of the DOCS or Brent Liggett. He indicated that he needed to discuss a trailer on his property. After interacting with two female employees for approximately two minutes, one of the female employees realized that Brooks was recording and asked him to stop. Brooks refused to stop recording and explained that he had a memory disability and needed to continue recording to have a record of his interactions with Carmel officials. The female employee who asked him to stop recording got up from her desk and walked out of the DOCS office (Filing No. 37, Video Recording of March 4, 2016 Visit to DOCS).

The DOCS female employee then went to the Law Department office and asked Haney to help with a disturbance in her office. She explained that a man was recording into the office and would not stop. They had pushed the emergency button for the police to assist, but the police had not arrived. Haney went to the DOCS office to try to diffuse the situation. When Haney entered the office, he saw Brooks standing by the sign that read "No Recording," and Brooks appeared upset with a red face (Filing No. 34-3 at 23–25).

Haney approached Brooks and stated that if he had problems with his memory, Brooks should write down his questions and the questions would be answered in writing. Haney directed Brooks to turn off the video recording. He informed Brooks that he was not allowed to record into the private areas of the DOCS. Brooks responded again that he has a memory disability, and Haney repeated that Brooks could write and submit his questions, and Carmel would respond in writing as an accommodation for the disability. Haney then asked Brooks multiple times if he had a disability with writing, however, Brooks did not respond to the question. Haney again directed Brooks to turn off the recording, and Brooks refused. Haney then walked around the office counter to stand directly in front of Brooks to block his recording into the private area of DOCS and to put

himself between the DOCS employees and Brooks (Filing No. 37, Video Recording of March 4,
2016 Visit to DOCS; Filing No. 34-3 at 26–27).

When Haney walked from the office cubicle area to where Brooks was standing, he stood
in front of Brooks, close enough to block the camera lens, but he did not physically touch Brooks
(Filing No. 34-3 at 27).  Haney stated, "Sir, I'd like you to turn off the camera."  Brooks responded,
"Don't get that close to me. You don't have to get that close to me."  Haney replied aggressively,
"You can turn off the camera." They repeated this back and forth to each other multiple times.
Brooks said, "Just back up a little bit.  Why are you getting so close to me?"  He then said, "You're
in my air space, and I don't feel comfortable."  Haney repeatedly stated "turn off the camera", and
Brooks again explained that he had a memory disability.  Haney repeated, "Write them down and
we'll give you written answers and then there's no problem; that's called a reasonable
accommodation."  Brooks then stated, "Don't touch me," and Haney replied, "I'm not touching
you. Am I touching you?"  Brooks did not respond and the two continued to argue about Brooks'
disability and Haney's accommodation.  Brooks again stated, "You're getting too close to me," and
"there's an airspace around people that you probably shouldn't get in." Haney asked, "why," to
which Brooks replied, "because I don't like you being that close to me." After again discussing
Brooks' disability and Haney's proposed accommodation, Brooks left the office and returned to his
car (Filing No. 37, Video Recording of March 4, 2016 Visit to DOCS, 10:10 to 14:35).

Just over a year after this encounter, Brooks went to the Carmel Law Department to drop
off a public records request on May 18, 2017 (Filing No. 43-2 at 3).  Brooks has no memory of
any details of what happened during this visit other than what is on his video recording (Filing No.
34-1 at 9–11). Brooks started his video recording before entering the Law Department office.
When he walked into the office, he was greeted and then was immediately asked if his video

recorder was on, to which he responded yes. He was told that he needed to turn off the recorder or step outside. Brooks replied that he needed to drop off papers, and he was again told that he needed to turn off the recorder or step outside. As this conversation occurred, Brooks recorded the posted sign that explained recording was not allowed in the office because of confidentiality concerns. After about twenty seconds of this exchange, Brooks began to explain that he has a memory disability and needed to record his activities, and Haney emerged from his office (Filing No. 37, Video Recording of May 18, 2017 Visit to Law Department).

Brooks stated that he needed to drop off his written records request, and Haney responded, "You may". Brooks explained that he needed to obtain public records and wanted a signature on the request receipt form. He asked if he could get a signed receipt, and Haney replied, "Not until you leave with that camera." Brooks asserted that he was in a public place, and Haney explained that the office was not a "public part of a public place." *Id.* at 0:40 to 1:01.

Haney stepped closer to Brooks to block him from continuing to record into the office (Filing No. 34-3 at 37). Brooks asked again for a copy of the signed records request, and Haney told him not until he turned off the video recording or left the office. Haney told Brooks he would receive a signed copy after he turned off the recording or stepped outside the office. Brooks repeated that he needed to record the interaction, and Haney instructed his coworker to call the police. Haney pointed toward the door for Brooks to leave the office, opened the door to the office, and exclaimed, loudly, "I'm not going to say it again"…."No"…"Get out!" When Brooks asked again if he could get a copy of the papers, Haney angrily yelled, "Turn it off! Turn it off!" Haney reached toward Brooks and the video camera as he told Brooks to turn it off. The video picture flips upside down and around and Haney made physical contact with Brooks. (Filing No. 37,

Video Recording of May 18, 2017 Visit to Law Department, 1:09 to 1:42).  Brooks then says
"Don't touch me, don't touch me!  *Id.*

　　During his deposition, Haney was asked about any physical contact between himself and
Brooks.  He explained,

> At that point I was so close to him that . . . I could smell him. . . . He moves the
> camera toward my face again and, reflexively, I block his forearm with my right
> hand to get that -- get him away from me. I did touch his -- I didn't touch his hand.
> I touched his lower forearm for about a second with an open palm. And then I
> backed away, and he leans toward me again so I moved to block it. I don't think I
> even touched him the second time, but that was about a second.

([Filing No. 34-3 at 39](#).)

　　When asked to describe the physical contact between Brooks and Haney, Brooks testified
during his deposition, "I can't tell you exactly what happened.  It's on the videotape.  But it's just
that's what happened." ([Filing No. 34-1 at 11](#).) When asked for details, Brooks replied, "I don't
remember." *Id.* In his subsequently written declaration, Brooks explained, "Haney crossed the
partition to get to my side. He came right up to me and shoved me against a wall, hurting my
wrist." ([Filing No. 43-2 at 4](#).)  In Haney's affidavit, Haney asserts, "I never shoved Brooks against
a wall." ([Filing No. 34-4 at 1](#).)

　　After the physical contact, Haney walked away and went back into his office. Brooks
repeated his request for a signed copy of his records request. Haney reemerged from his office
about twenty-five seconds later, and Brooks again asked for a copy of the papers.  Brooks then
stated that Haney hurt his wrist "when you touched me." Brooks again explained he needed a
signed copy, and Haney stated that he would give him the signed copy when he turned off the
video recording.  Brooks continued to record in the office and stated to Haney "you hurt my wrist
when you pushed me."  Haney signed the records request and gave a copy to Brooks.  Then Brooks
left the office ([Filing No. 37](#), Video Recording of May 18, 2017 Visit to Law Department, 1:42 to

6:42). After leaving the office, Brooks went to the emergency room to have his wrist examined because it was hurting. His wrist was sprained but not fractured (Filing No. 43-2 at 4).

On March 1, 2018, Brooks filed his Complaint against the Defendants, asserting claims for failing to accommodate his disability in violation of Title II of the ADA, violation of the First Amendment right to self-expression, violation of the Fourth Amendment protection against excessive force/unreasonable seizure, conspiracy to violate civil rights, and battery and intentional infliction of emotional distress under Indiana state law.  (Filing No. 1 at 4.)

In his Statement of Claims, Brooks explained, "Plaintiff does not intend to pursue his claims against Defendants for a conspiracy to violate his civil rights pursuant to 42 U.S.C. § 1985. That claim is withdrawn."  (Filing No. 31 at 2.)  And in his summary judgment response brief, Brooks further explained, "Plaintiff intended to withdraw his claim for intentional infliction of emotional distress but failed to properly note this in his Statement of Claims."  (Filing No. 42 at 4 n.1.)  The Defendants filed their Motion for Summary Judgment on Brooks' remaining claims.

## II.      SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S. Ct. 1348 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584

(citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

The Defendants present various arguments for summary judgment on Brooks' claims for violation of Title II of the ADA, violation of First and Fourth Amendment rights, and battery.  The Court will address each claim separately.

### A.   Title II ADA Claim Against Carmel

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. §35.160(b)(1).

The Seventh Circuit recently has explained,

> To prove a *prima facie* case of discrimination under Title II, a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of his disability. It is well established that a failure to make reasonable modifications in policies, practices, or procedures can constitute discrimination under Title II.

*Lacy v. Cook Cty.*, 897 F.3d 847, 853 (7th Cir. 2018) (internal citations and quotation marks omitted).

The Defendants argue that Brooks' allegation that Carmel's refusal to allow him to record himself in public despite his disability violated Title II of the ADA fails, because Carmel has no liability under the ADA in this case. The Defendants do not challenge Brooks' disability; rather, they argue that Carmel's policy of not allowing video/audio recording within the offices of the Law Department and DOCS does not deny Brooks the city's services, programs, or activities or participation in such.

The ADA requires providing individuals with meaningful access, not necessarily identical access, *see United Spinal Ass'n v. Bd. of Elections*, 882 F. Supp. 2d 615, 623–24 (S.D.N.Y. 2012). Carmel contends it has provided or offered to provide Brooks with meaningful access to city services. Carmel's recording policy does not bar Brooks from recording in the majority of City Hall spaces including the hallways, other common spaces, or designated meeting rooms. If Brooks or any other individual has a need to record a communication with a Carmel official or employee,

10

such a recorded communication would be permitted to take place outside the inner offices or work areas of the departments such as in the hallway, common spaces, or a conference or meeting room.

The Defendants argue that meaningful access was presented to Brooks, and he was not denied access to services. When Brooks visited the DOCS to discuss a trailer on his property, rather than allowing him to video record in the office to preserve the communication, Haney offered that Brooks could submit his questions in writing, and he would be given answers in writing to preserve the communication. When Haney asked Brooks if he had a disability related to writing, Brooks refused to respond.

Concerning Brooks' visit to the Law Department office to submit a public records request, the Defendants assert the procedure to receive, document, and respond to public records requests provides meaningful access to that city service without the need for Brooks to video record inside Carmel's offices. When a records request is received, Carmel acknowledges the receipt of the request in writing and then sends a follow-up letter again setting out the request and the substantive response to the request. The Defendants point out that, on the particular records request form that Brooks delivered to Carmel's Law Department on May 18, 2017, Brooks had indicated that he wanted Carmel to correspond with him via mail to his residence in writing concerning the request—the very procedure that Carmel had in place (Filing No. 34-7 at 1). The Defendants note that Brooks had utilized this same procedure for a public records request in 2012 (Filing No. 34-6 at 1). In any event, the Defendants argue, Brooks fully received the city services he was seeking— the opportunity to submit a public records request and to receive written confirmation of that request (Filing No. 34-7). Because Brooks was not denied meaningful access to any city services, the Defendants argue that his Title II ADA claim fails as a matter of law.

In response, Brooks argues that he was denied city services due to his disability. He notes,

> In the March 4, 2016 encounter Brooks attempted to speak with a zoning official, Brent Liggett, regarding the trailer parked in his driveway but was unable to speak to anyone in the department about his problem before Haney threw him out of the office. Brooks received no services whatsoever in that encounter. . . . In the course of the May 18, 2017 visit to the Law Department, Brooks [] ultimately was able to submit his records request and obtain a receipt, but only after being physically assaulted.

(Filing No. 42 at 6.) "That Brooks may have recorded himself unmolested on a few other visits does not change the fact that the City refuses to serve Brooks if he records himself." *Id.*

Concerning the accommodation offered by Carmel that he could submit his questions in writing and receive written responses, Brooks argues that such an accommodation might be sufficient in some instances, but he has difficulty writing documents longer than short notes to himself. He asserts that responding to written questions would not provide him with meaningful access to city services because he lacks the ability to write out questions to a complex zoning question. Brooks argues that written correspondence is rarely an adequate substitute for speaking with somebody. The accommodation he seeks is a simple exception to Carmel's policy against making recordings, which requires no expenditure of money, no additional personnel or equipment, and no physical modifications. Confidentiality concerns can be addressed by requiring Brooks to make an appointment ahead of time, and confidential documents can be put away before his appointment. Brooks argues that Carmel has failed to provide him with meaningful access to city services, so his Title II ADA claim should survive summary judgment.

The Court finds that Carmel is entitled to summary judgment on Brook's Title II ADA claim. Carmel has not denied Brooks meaningful access to the city services it provides to all other individuals. Brooks was able to submit his public records request on May 18, 2017, and he was given a signed acknowledgement of his submitted request. Carmel followed its normal procedure of sending Brooks a letter indicating that it had received his public records request. Carmel then

sent the follow-up letter with the substantive response to the request (Filing No. 34-7). Brooks successfully had used this same procedure for obtaining public records in 2012. Brooks was not denied access to the city service of submitting public records requests and receiving a response.

When Brooks asked to speak to the "head man" of the DOCS while video recording into the office in violation of Carmel's policy, he was told that he could not video record in the office, but he could submit written questions, and he would be given written answers. When he said that he needed to video record the interaction to preserve the communication, he was told that the written communications would serve as an accommodation for him to preserve the communication. Brooks' *post hoc* argument that he has difficulty writing documents longer than short notes to himself and he cannot write out questions for a complex zoning issue is belied by the evidence in the record of his handwritten public records requests in 2012 and 2017 and his admission that he can read and write. Importantly, when Haney was offering an accommodation to Brooks, he specifically asked whether Brooks had a disability related to writing. Brooks did not answer Haney's repeated questions about his writing abilities, thereby thwarting any efforts to make an accommodation related to writing if such an accommodation was necessary.

Carmel's offered accommodation to accept written questions from Brooks and to provide written answers served as a reasonable accommodation for Brooks' memory disability and would have preserved the communications as desired by Brooks. This provided Brooks with meaningful access to the city services he was seeking. The practice of allowing individuals to video or audio record in public spaces throughout City Hall provided another reasonable accommodation that would have given Brooks meaningful access to the services he was seeking. Therefore, the Court concludes that the designated evidence shows Carmel did not deny Brooks access to city services due to his disability, and summary judgment in favor of Carmel is appropriate on the ADA claim.

The Defendants make the additional argument that Carmel cannot be liable for damages because the evidence shows it did not act with "deliberate indifference." However, in light of the Court's determination above, the Court declines to address this secondary argument.

**B.**     **First Amendment Claim Against Carmel and Haney**

The Defendants argue that they are entitled to summary judgment on Brooks' First Amendment claim because he was not engaged in protected speech when video recording his interactions with Carmel city officials, and there was no violation of the right to free expression. The Defendants acknowledge that the "First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest. *See Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994)." (Filing No. 33 at 20.) They assert, "[h]owever, what is missing from Brooks' First Amendment claim is the public interest or public concern requirement which justifies the First Amendment protection." *Id.*

In order to have First Amendment protection, a plaintiff must demonstrate that he had a message to be communicated and an audience to receive the message regardless of the medium in which the message is to be expressed. *Hurley v. Irish-American Gay*, 515 U.S. 557, 568–69 (1995). "It is well established that in order to be protected under the First Amendment, images must communicate some idea." *Porat v. Lincoln Towers Cmty. Ass'n*, 2005 U.S. Dist. LEXIS 4333, at *13–17 (S.D.N.Y. Mar. 17, 2005) (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).

The Defendants argue,

Here, Brooks wasn't recording his interactions with Doug Haney or other City officials for the purpose of recording events of public interest or concern like a citizen may do when they record a public meeting or record a police officer making an arrest. Rather, Brooks sought to record communications with City officials on matters uniquely pertinent to only him, a public records request for an accident in which he was involved or witnessed and a matter concerning a trailer parked on his girlfriend's property. He has admitted that he sought to record his communications with City officials for his own use. He had no message to communicate and no

audience to receive that message. The City Defendants are entitled to summary judgement [sic] on Plaintiff's First Amendment claim.

(Filing No. 33 at 21–22.)

The Defendants additionally argue that Haney is entitled to qualified immunity against any First Amendment claim because Brooks cannot show that a constitutional right existed, at the time of the incident, to videotape his interactions with Carmel city officials for purely personal reasons. To overcome qualified immunity, Brooks must show there was a clearly-established constitutional right (defined with appropriate specificity) at the time of the incident, *see Hernandez v. Foster*, 657 F.3d 463, 473–74 (7th Cir. 2011), and the Defendants argue Brooks cannot do so. Thus, qualified immunity protects Haney against the First Amendment claim.

Brooks responds that restricting the use of audio and video recording devices suppresses speech just as effectively as restricting the dissemination of the resulting recording. He asserts that audio/video recordings are media of expression commonly used for the preservation and dissemination of information; they are included within the speech and free press guarantees of the First Amendment. Brooks argues that the act of making recordings is necessarily included in the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the recording.  In support of his argument, Brooks points to the Seventh Circuit's decision in *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), where the court protected a First Amendment right to record police officers performing their official duties in public places.

Brooks argues that there is no Supreme Court or Seventh Circuit precedent requiring the dissemination of the recording to an audience in order to receive First Amendment protection. But even still, Brooks told the Carmel city employees during his March 2016 encounter that sometimes city officials do not accurately remember his actions, so he needed to record them. This concern came from an earlier experience with a Carmel police officer who gave Brooks a ticket, and when

disputing the ticket in city court, the officer told a different story, so Brooks showed his recorded video, which helped him prevail in court (Filing No. 43-2 at 2). Brooks argues his "intended audience is anyone to whom he would need to establish the truth should City officials mischaracterize his actions," and furthermore, "[i]t is a matter of public interest when public officials engage in any kind of misconduct. Such misconduct would include Doug Haney's physical assault of Brooks—a fact that few would likely believe had Brooks not recorded it." (Filing No. 42 at 9–10.)  Brooks argues he has a right to record public officials on public property, so his First Amendment claim is not subject to summary judgment.

Brooks asserts that Haney is not entitled to qualified immunity because the law was clearly established at the time of the incidents that citizens may make recordings of the actions of government officials performing their duties in public places as stated in *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012).  Furthermore, Brooks seeks an injunction prohibiting the Defendants from interfering with his right to record himself in the publicly accessible areas of city offices, and the doctrine of qualified immunity does not apply to Brooks' claim for injunctive relief.  *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1004 (7th Cir. 2019).

In reply, the Defendants assert that Brooks has mischaracterized their "argument as only supported by the fact that Brooks never disseminated or broadcast his videos of personal encounters with City officials and that no Seventh Circuit or Supreme Court [decisions] require dissemination." (Filing No. 46 at 12.) However, the Defendants explain, their "actual argument is that Brooks was not engaged in expressive speech when he came to Carmel City offices to record his communication with City officials, so he could review and remember those conversations in the future, and there is plenty of case law support for that concept."  *Id.*  In *Porat*, the plaintiff's First Amendment claim failed because his photography was a personal "hobby" intended for

"aesthetic and recreational" purposes. *Porat*, 2005 U.S. Dist. LEXIS 4333, at *15. In *Larsen v. Fort Wayne Police Dep't*, 825 F. Supp. 2d 965, 979–80 (N.D. Ind. 2010), the plaintiff's First Amendment claim failed because his desire to video record his daughter's school choir performance was for purely personal purposes and, thus, was not protected speech.

> The Defendants argue,
>
> Brooks did not make a recording of the activity of public officials at Carmel City offices to communicate some idea but rather as a hedge against what he perceives as a history of City officials lying about his activities. Brooks wanted the videos to defend himself against future civil citations or other sanctions levied by Carmel City officials. . . . Brooks sought to record communications with City officials on matters uniquely pertinent and of interest only [to] him. There is no audience for such recordings. The City Defendants are entitled to summary judgement on Plaintiff's First Amendment claim.

([Filing No. 46 at 13](#).)

Viewing the designated evidence in the light most favorable to Brooks as the non-moving party, as the Court must do when reviewing a summary judgment motion, *see Zerante*, 555 F.3d at 584, the Court concludes that summary judgment is not appropriate on the First Amendment claim. The Defendants argue that to support the claim there must be a message to be communicated and an audience to receive the message, and a recording for purely personal use is not expressive speech. However, there is evidence in the record that Brooks informed Carmel employees that his recordings were used to document communications between himself and Carmel officials because sometimes people forget how events play out, and these recordings could be used later to communicate the recorded messages to other Carmel officials, such as a city judge. These recordings carry a message that can be communicated to an audience (however small that audience may be).

Additionally, there is no evidence that suggests Brooks recorded these interactions for purely personal purposes. The evidence does not suggest that Brooks recorded the videos as a

personal hobby, made the videos for personal aesthetic or recreational purposes, or later watched his recordings for his own personal, private entertainment. Rather, the evidence viewed in the light most favorable to the non-moving party suggests that Brooks recorded the videos to preserve a message to communicate to other city officials if needed.

The Defendants rely upon the court's decision in *Larsen*, yet the court there explained legal principles that cut against the issuance of summary judgment. The court stated, "The First Amendment is not implicated because a person uses a camera, but rather, when that camera is used 'as a means of engaging in protected expressive conduct,' or, less commonly, to 'gather information about what public officials do on public property.'" *Larsen*, 825 F. Supp. 2d at 979 (internal citations omitted). In that case, "Larsen [did] not argue that he was attempting to express or communicate an idea through his proposed videography of the show choir invitational or that he was gathering information about what public officials do on public property." *Id.* However, in this case, Brooks argues that he was gathering information about what public officials do on public property. His First Amendment claim is not subject to summary judgment.

Regarding Haney's claim to qualified immunity, in making this determination, the Court considers whether the facts demonstrate a constitutional violation and whether the constitutional right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231–32, 236 (2009). If either part is missing, qualified immunity will protect the government official from liability for civil damages. *Id.* at 231.

> The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," and the Seventh Circuit has long held that "the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted."

*Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (internal citations omitted). To show that a government official's conduct violated a clearly established right "do[es] not require a case

directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

In this case, the constitutional question falls short to avoid qualified immunity. Brooks relies on *ACLU v. Alvarez* for the general proposition that citizens may make recordings of the actions of government officials performing their duties in public places, but the Court concludes that this defines the right at too high a level of generality.  The *Alvarez* decision was made in the context of recording police officers performing their official duties in public places to promote police accountability.  But in this case, Haney is not a police officer; rather, he is a government employee who was enforcing a city policy prohibiting recording within the inner offices of Carmel's city hall. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The contours of Brooks' claimed right—to video record his private interactions with city officials within private city offices that have "no recording" signs posted—are not sufficiently established or clear to allow Haney to understand that he was violating Brooks' constitutional rights. Thus, Haney is entitled to qualified immunity against Brooks' First Amendment claim, and he cannot be held liable for civil damages.

## C.    Fourth Amendment Claim Against Haney

In his Complaint, Brooks alleges that "Haney's attempts to remove Brooks from City offices by physical force constitute excessive force in violation of the Fourth Amendment." (Filing No. 1 at 4.) The Defendants argue that this claim against Haney fails because the Fourth Amendment does not apply to Haney in the factual context of this case, Haney did not seize Brooks, and Haney is entitled to qualified immunity.

The Defendants argue that the Fourth Amendment primarily applies in the context of law enforcement to prevent police from searching private places without a warrant or exigent circumstances and from seizing suspected criminals unreasonably. "[T]he principal concern of [the Fourth] Amendment's prohibition against unreasonable searches and seizures is with intrusions on privacy in the course of criminal investigations." *Ingraham v. Wright*, 430 U.S. 651, 673 n.42 (1977). The Defendants assert that the Fourth Amendment's expansion into non-law enforcement activities has been limited to government conduct motivated by investigatory or administrative purposes such as when "the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13 (1978) (Fourth Amendment applies to OSHA inspectors); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 334–35 (1985) (Fourth Amendment applies to search by a school administrator in the school setting); *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967) (Fourth Amendment applies to municipal health and safety inspector).

The Defendants point the Court's attention to the recent case of *Marotz v. City & Cty. of S.F.*, 2015 U.S. Dist. LEXIS 26076 (N.D. Cal. Mar. 2, 2015). There, a citizen filed a Section 1983 suit against the City of San Francisco, its city attorney's office, its city attorney, and its city attorney investigator under the Fourth Amendment, contending that the attorney investigator physically removed him from the reception area of the city's law department. The district court in *Marotz* dismissed the Fourth Amendment claim because the city attorney investigator was not pursuing an investigative or administrative purpose; rather, the confrontation was motivated by personal malice or frustration. *Marotz*, 2015 U.S. Dist. LEXIS 26076, at *16–17. The Defendants argue that the same result is warranted in this case. Haney was not involved in any criminal or civil investigation when interacting with Brooks, so the Fourth Amendment does not apply in this case.

The Defendants further argue that, even if the Fourth Amendment did apply, Haney did not violate it because he did not seize Haney.  There must be physical force and a show of authority, and the individual must submit to the show of authority.  The state actor must restrain the freedom of the individual to walk away.  In this case, Haney did not show authority, and Brooks did not submit to any show of authority.  Haney did not acquire physical control over Brooks; rather, Haney tried to get Brooks to leave the city offices, and any physical contact between the two was inadvertent. Therefore, the Defendants assert, Haney did not seize Brooks. The Defendants additionally argue that qualified immunity protects Haney against Brooks' Fourth Amendment claim because Brooks cannot demonstrate that the constitutional right to be free from an unreasonable seizure existed in the factual setting present in this case.

Brooks responds that Haney physically assaulted him when he visited the Carmel city offices, and the basic purpose of the Fourth Amendment's prohibition of unreasonable searches and seizures is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.  *Camara*, 387 U.S. at 528.  Brooks argues that there is no criminal statute that prohibits recording in city offices, but Haney thought law enforcement was necessary because he called the police when Brooks was recording in the city offices, and when the police did not immediately arrive, Haney did himself what he wanted the police to do, which was enforce the policy against recording.  Thus, Brooks argues, the Fourth Amendment applies to Haney's conduct.

Furthermore, Brooks argues, Haney did exert physical force against him and did exert a show of authority.  Brooks left the DOCS office because of Haney's show of authority, and Haney pushed Brooks against the wall in the Law Department office.  Brooks argues this constitutes a seizure as there was a restraint on his movement.

Concerning Haney's claim to qualified immunity, Brooks responds,

> With regard to the Fourth Amendment, Haney's conduct is so egregious that no reasonable person could believe that it would not violate clearly established rights. There is no universe in which it is appropriate for a city attorney to shove a 59-year-old disabled man into a wall in order to prevent him from recording himself in City Hall.

(Filing No. 42 at 13.)

After reviewing the designated evidence, the parties' arguments, and the case law, the Court concludes that summary judgment is warranted on Brooks' Fourth Amendment claim. The Defendants' arguments are well taken. The Fourth Amendment protects individuals' liberty and privacy interests and primarily applies in the context of law enforcement to prevent police from searching private places without a warrant or without exigent circumstances and from seizing suspected criminals unreasonably. *Ingraham*, 430 U.S. at 673 n.42. The limited expansion of Fourth Amendment protections to non-police situations involve government conduct motivated by investigatory or administrative purposes. *Marshall*, 436 U.S. at 312–13. The designated evidence indicates that Haney was not engaged in any law enforcement activity or any criminal or civil investigatory or administrative activity when he interacted with Brooks. Therefore, the protections of the Fourth Amendment do not apply to the factual circumstances of this case.

Furthermore, this case is nearly identical to the case of *Marotz*, where any physical contact between Haney and Brooks was motivated by fear or frustration rather than to further some civil or criminal investigative purpose for Carmel. Although *Marotz* is not binding precedent, the same result is warranted—the Fourth Amendment does not apply. Additionally, Haney did not seize Brooks within the meaning of the Fourth Amendment because there is no evidence that Haney intended to or did acquire physical control over Brooks when any physical contact occurred. Haney was not trying to keep Brooks in the city offices; rather, he wanted him to leave the city offices. Brooks' movement was not restrained, and he always was free to leave and move about.

Brooks was not seized. Therefore, the Court **grants** summary judgment to Haney on Brooks'

Fourth Amendment claim.

**D.**     **State Law Battery Claim Against Haney**

Lastly, Brooks very briefly alleges in his Complaint that "Haney's actions constitute battery

. . . under Indiana law." (Filing No. 1 at 4.) The Defendants explain,

> One is liable for the tort of battery if (a) he acts intending to cause a harmful or
> offensive contact with the person of the other or third person, or an imminent
> apprehension of such contact, and (b) a harmful contact with the person of the other
> directly or indirectly results.

*Singh v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008) (internal citation and quotation marks

omitted). The Defendants acknowledge there was physical contact between Haney and Brooks on

May 18, 2017, but they deny any contact between the two on March 4, 2016.

They assert that there is no evidence Haney intended to cause harmful or offensive contact

with Brooks. Battery is an intentional tort that requires an intent to cause harmful or offensive

contact with the plaintiff. *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608 (Ind. 2007). The

Defendants argue there is no evidence that Haney intended to cause harm to Brooks at the Law

Department office on May 18, 2017.  Haney and Brooks came into physical contact when Haney

was trying to draw Brooks out of the office and into the public hallway.  The Defendants assert

that the physical contact occurred when Brooks raised the camera toward Haney, and Haney

reflexively moved his hand to block the forearm of Brooks. They argue this touching was

inadvertent, and, under the circumstances of Brooks' visit to the Law Department and Brooks'

history with Carmel, there is no evidence to conclude that Haney intended a harmful or offensive

contact when he and Brooks touched briefly. Thus, the Defendants argue, the battery claim is

subject to summary judgment.

Brooks responds that factual disputes preclude entry of summary judgment on the battery claim. He argues that Haney battered him twice: first on March 4, 2016, by getting in Brooks' face and pushing him backwards out of the office, and again on May 18, 2017, by shoving him against a wall. Brooks asserts that assault occurs when a person acts intending to cause an imminent apprehension of a harmful or offensive contact with another person, *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind. 2008), and even a slight touching can be the basis of a battery action under Indiana law. *Lessley v. City of Madison*, 654 F. Supp. 2d 877, 914 (S.D. Ind. 2009).

Brooks argues that the video recording of the March 2016 incident shows Haney getting so close to Brooks that Haney's face fills the entire screen, and Brooks contends that while doing so, Haney's stomach touched him. This occurs while Haney is ordering Brooks to leave the office, and it is clear from the video that Haney intended to physically intimidate Brooks into exiting the office. Brooks argues that the video of the May 2017 incident shows Haney moving rapidly across the partition that separates the employees' cubicles from the public area of the office and moving toward Brooks while ordering him to get out. Brooks contends that Haney does not walk by him in order to lure him out the door; he argues the only plausible interpretation of Haney's actions in the video is that he was attempting to force him to stop recording or to shove him out the door, causing him to hit the wall instead. Brooks concludes, "Summary judgment is inappropriate on the battery claim due to the disputed interpretation of Haney's intent based on the video evidence." ([Filing No. 42 at 14](Filing No. 42 at 14).)

The Defendants reply,

> With respect to the March 4, 2016 incident, the only admissible evidence is Haney's testimony that the two did not physically touch and what is shown on the video. Defendants acknowledge that the video demonstrates [the] two parties were in close quarters, but it does not show a touching and does create a triable issue in light of Haney's testimony that a touching did not occur. Thus, the Defendants are

24

entitled to summary judgment on a civil battery claim related to the March 4, 2016 incident because there was no touching.

(Filing No. 46 at 19.)

The Defendants further reply,

As to the May 18, 2017 incident at the Law Department, the only admissible evidence is the description of the incident by Haney and what is shown on the video. Plaintiff was not thrown against the wall. Battery is not committed through negligence or inadvertence. Battery is an intentional tort and requires the intent to cause a harmful or offensive contact with the plaintiff. *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind.2007). Haney and Brooks came into physical contact but that contact occurred as Haney was attempting to exit the Law Department for the purpose of drawing Brooks into the hallway where recording was permitted and to get Brooks away from his staff. In their Opening Brief, Defendants designated evidence that Haney was advised before this incident that Brooks had made a statement deemed threatening to City employees. Plaintiff does not challenge that evidence.

Thus, in [the] circumstances then present, the drawing of Brooks into the hallway away from his staff was important. The physical contact occurred when Brooks raised the camera toward Haney and Haney reflexively moved his hand to block the forearm of Brooks when Brooks raised the camera toward him when the two were in close quarters in the tiny entryway to the Law Department. This touching was inadvertent and under the circumstances of Brooks' visit to the Law Department and Brooks' history with the City, there is no evidence to conclude that Haney intended a harmful or offensive contact when he and Brooks touched briefly.

*Id.* at 19–20.

The Court first notes that Brooks' lawsuit is premised on his inability to form memories and remember events from the past. At his deposition, Brooks testified that he has no memory of anything that happened during his visits to Carmel's City Hall on March 4, 2016 and May 18, 2017, and he can only rely on what is shown in his video recordings (Filing No. 34-1 at 5–11). When asked during his deposition to describe the physical contact between him and Haney during the May 2017 incident, Brooks testified, "I can't tell you exactly what happened. It's on the videotape. But it's just that's what happened." *Id.* at 11.  When asked for details, Brooks replied, "I don't remember." *Id.* Then in his subsequently written declaration, Brooks explained, "On review of the

recording of the [March 2016] incident, . . . Haney comes up to me and gets so close to me that his stomach touched me until I backed away. Haney walked forward, forcing me to walk backward, until I was backed out of the office." (Filing No. 43-2 at 3.)  "On review of the recording [of the May 2017 incident], . . . Haney crossed the partition to get to my side. He came right up to me and shoved me against a wall, hurting my wrist." *Id*. at 4.

Federal Rule of Civil Procedure 56(c)(4) states, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Brooks is not competent to testify about the facts alleged in his declaration as he testified under oath that he does not remember the events of the past; thus, he has no personal knowledge of the facts and can only speculate as to what occurred.  Furthermore, Brooks would be capable of only providing—as he did in his declaration—his own characterization of the video evidence, but this too is improper to establish facts because it is simply his opinion about the facts shown in the video. *See Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 633 (N.D. Ill. 2012) ("[A] party's own characterization of evidence is not permitted in a Local Rule 56.1 statement. . . . The actual evidence is the video footage itself, not [a party's] characterization of it."). Therefore, the Court will not consider Brooks' characterization of the video evidence as an alternative version of the facts of the events that occurred in March 2016 and May 2017.

Regarding the March 2016 incident, the designated evidence shows that when Haney walked in front of Brooks, he stood close enough to block the camera lens, but he did not physically touch Brooks (Filing No. 34-3 at 27). Haney stated, "Sir, I'd like you to turn off the camera." Brooks responded, "Don't get that close to me. You don't have to get that close to me."  Haney replied, "You can turn off the camera." They repeated this back and forth to each other multiple

times. Brooks said, "Just back up a little bit. Why are you getting so close to me?" He then said, "You're in my air space, and I don't feel comfortable," and "don't touch me," and Haney replied, "I'm not touching you. Am I touching you?" Brooks did not respond but rather the two men continued to argue about Brooks' disability and Haney's accommodation.  Brooks again stated, "You're getting too close to me," and "there's an airspace around people that you probably shouldn't get in." Haney asked, "why," to which Brooks replied, "because I don't like you being that close to me." After again discussing Brooks' disability and Haney's proposed accommodation, Brooks left the office and returned to his car (Filing No. 37, Video Recording of March 4, 2016 Visit to DOCS, 10:10 to 14:35). While the evidence shows that Haney and Brooks were very close to each other, it does not show physical touching. Therefore, Brooks' battery claim for the March 2016 incident fails.  Summary judgment is **granted** in favor of Haney on this claim.

Regarding the May 2017 incident, the designated evidence shows that Brooks entered the Law Department office and had about a twenty-second conversation with an employee about turning off his video recording. Haney then emerged from his office. Brooks explained that he needed to drop off a records request, and Haney responded, "You may." Brooks further explained that he needed to obtain public records and wanted a signature on the request receipt form.  He asked if he could get a signed receipt, and Haney replied, "Not until you leave with that camera." Brooks responded that he was in a public place, and Haney explained that the office was not a "public part of a public place." (Filing No. 37, Video Recording of May 18, 2017 Visit to Law Department, 0:40 to 1:01.)

Haney testified that he stepped closer to Brooks to block him from continuing to record into the office (Filing No. 34-3 at 37).  Brooks asked again for a copy of the signed records request, and Haney told him not until he turned off the video recording or left the office.  Haney stated that

Brooks would receive a signed copy after he turned off the recording or stepped outside the office. Brooks repeated that he needed to record the interaction, and Haney instructed his coworker to call the police.  Haney pointed toward the door for Brooks to leave the office, opened the door to the office, and yelled aggressively, "I'm not going to say it again!"…"No!"…"Get out!"  When Brooks asked again if he could get a copy of the papers, Haney forcefully yelled, "Turn it off! Turn it off!"  Rather than waiting for a law enforcement officer to arrive, Haney approached Brooks, reached toward Brooks and the video camera as he yelled at Brooks to turn it off, and he made physical contact, resulting in Brooks suffering pain to his wrist.  During the altercation, the video camera is turning from side to side.  After this physical contact, Haney walked away and went back into his office (Filing No. 37, Video Recording of May 18, 2017 Visit to Law Department, 1:09 to 1:47).

> Haney testified about the physical contact between himself and Brooks:
>
> At that point I was so close to him that . . . I could smell him. . . . He moves the camera toward my face again and, reflexively, I block his forearm with my right hand to get that -- get him away from me. I did touch his -- I didn't touch his hand. I touched his lower forearm for about a second with an open palm. And then I backed away, and he leans toward me again so I moved to block it. I don't think I even touched him the second time, but that was about a second.

(Filing No. 34-3 at 39.)

Battery is an intentional tort that requires an intent to cause harmful or offensive contact with the plaintiff.  There must be more than just the physical contact.  *Mullins*, 865 N.E.2d 608. Brooks argues that summary judgment is not warranted on the battery claim because of a disputed interpretation of Haney's intent based on the video evidence.   Brooks points to the video as evidence of Haney's intent.  His argument that Haney rapidly moved across the office and came right up to him and shoved him against a wall is not confirmed by the video.  However, the video evidence shows Haney speaking angrily with Brooks for approximately one minute, and trying to

get him to turn off the video recording or leave the office.  After Brooks refused to turn off the video recording, Haney approached Brooks and reached toward Brooks and his video camera as he yells for Brooks to turn it off, and Haney made physical contact.  The video shows that Haney is the aggressor who approaches Brooks.  The parties' disagreement about whether Haney intended to cause harmful or offensive contact when he touched Brooks is a disputed issue of material fact. Therefore, summary judgment is **denied** on the battery claim for the May 2017 incident.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment, ([Filing No. 32]), is **GRANTED in part and DENIED in part**. The Defendants are **granted** summary judgment on Brooks' Title II ADA claim, Fourth Amendment claim, and the March 2016 battery claim. Summary judgment is **denied** as to Brooks' First Amendment claim, and that claim may proceed against Haney and Carmel.  However, Haney is entitled to qualified immunity against Brooks' First Amendment claim, so he cannot be held liable for civil damages on that claim. Summary judgment is also **denied** as to Brooks' May 2017 state law battery claim.

**SO ORDERED.**

Date:  9/15/2020

DISTRIBUTION:

Paul Thomas Belch
TRAVELERS STAFF COUNSEL
pbelch@travelers.com

John R. Maley
BARNES & THORNBURG, LLP
jmaley@btlaw.com

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@tlawindy.com

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

29